This is an appeal from a judgment of the Essex County Orphans' Court denying probate of the will of Clifford C. Wendehack, deceased, on the ground that it had been signed by the testator after the attesting witnesses had affixed their signatures. *Page 205 
The testator was an architect residing in the Town of Montclair and having his office in the City of New York. His will was executed on May 29, 1947, at his office and in the presence of his secretary Mrs. Ann-Marie James, his employee Mr. Gilbert Oliver, and Mrs. Marie T. Keil, a friend of Mrs. James. The will bears the testator's signature, a complete attestation clause, and the signatures of Mr. Oliver and Mrs. Keil as attesting witnesses. It provides for specific legacies, including $5,000.00 to the testator's sister, appellant Edna Dorothea Hubbell, $5,000.00 to Betty Nolan of Warwick, New York, $5,000.00 to appellant Mrs. Ann-Marie James, and $2500.00 to her son, appellant Stewart Harry James, Jr., bequeaths his business to Mrs. James with provisions relative to the division of profits therefrom amongst his wife, Daisybelle Wendehack, his employees, and Mrs. James, bequeaths the residue of his estate to his wife, and designates his wife, Mrs. James and a trust officer of the Chase National Bank, as executors.
The will was not prepared by counsel but was drafted by the testator and typed by Mrs. James. Nevertheless, it is in proper form and the attack thereon by the testator's widow is pressed on the sole ground that although the signatures of the testator and the attesting witnesses were affixed at the same time and place, as part of the same transaction, the attesting witnesses allegedly signed the will before the testator affixed his signature. If this fact is sufficiently established then under our Statute of Wills (R.S. 3:2-3) as construed in the leading case of Lacey v. Dobbs, 63 N.J. Eq. 325 (E. A. 1901) the will is invalid. The appellants contend that Lacey v. Dobbs
is a hypertechnical construction which frustrates the testator's intention without justifiable public purpose (37 Yale L.J.
1003 (1928)): that it has been discarded in many other jurisdictions (1 Page on Wills (1941) Sec. 372); and that it should be confined and deemed inapplicable where, as here, the testator made oral acknowledgment that the will was his in the presence of the attesting witnesses immediately after all of the signatures had been affixed.
The doctrine of Lacey v. Dobbs is so firmly embedded in our law of Wills that to question it, in the language of Mr. *Page 206 
Justice Holmes, "would be to lay hands on the Ark of the Covenant". (Springer v. Government of the Philippine Islands,277 U.S. 189, 211). It imposes the fixed and certain rule that everything required to be done by the testator must precede the subscription of the testamentary witnesses; if the rule is not complied with the will is invalid and the mere fact that the testator subsequently acknowledged it as his will has no legal significance. See In Re Sutterlin, 99 N.J. Eq. 363 (E. A.
1926).
We come now to the factual issue of whether the testator signed the will before or after the attesting witnesses. Mrs. Keil testified explicitly that the testator first signed the will and that thereafter she and Mr. Oliver, the other attesting witness, affixed their signatures. To attack her credibility, New York counsel for the testator's widow testified that Mrs. Keil had made an earlier statement to the contrary. Mr. Oliver testified that the attesting witnesses affixed their signatures before the testator signed the will. To attack his credibility and disinterest, appellants point out that although he had voluntarily conferred with the widow's counsel he had refused to confer with counsel for the proponents of the will, that he appeared during the hearing in the Orphans' Court with his own counsel, and that there were discrepancies in his testimony and a failure of recollection on most issues other than the order in which the will was signed. Mrs. James, who was the only other person present at the execution of the will, corroborated Mrs. Keil's testimony that the testator first signed the will and that the attesting witnesses thereafter affixed their signatures.
With due regard to the finding of the trial judge and his opportunity to judge the credibility of the witnesses, we have concluded from our examination of the testimony that it preponderates in favor of the finding that the testator first executed the will and that the attesting witnesses signed it thereafter. In any event, such doubts as might be raised because of Mr. Oliver's testimony are dispelled by the weight to be given to the attestation clause. Although our courts have, from time to time, used varying language as to the exact force of the attestation clause (see 5 Wigmore, Evidence (3d Ed. *Page 207 
1940) Sec. 1511 p. 335) they have, since early times, recognized that sound public policy requires that a will bearing the signature of the testator and the signatures of the attesting witnesses with a complete attestation clause should not be upset for alleged deficiency in its execution except upon clear evidence. See Allaire v. Allaire, 37 N.J.L. 312, 325 (Sup.Ct. 1875) aff'd, 39 N.J.L. 113 (E. A. 1876); Tappen v.Davidson, 27 N.J. Eq. 459, 461 (Prerog. Ct. 1876). In InRe Seymour's Will, 114 Atl. 799, 800 (N.J. Prerog. Ct.
1921), not reported in the New Jersey Reports, Vice Ordinary Foster, in finding that a will bearing proper attestation clause had been properly executed despite testimony to the contrary from the attesting witnesses, pointed out that a perfect attestation clause "affords protection from defective memories and poor or imperfect recollection, as well as against intentional forgetfulness and deliberate misrepresentation of the facts. It preserves in permanent form a record of the facts attending the execution of the will, and, as it is prima facie evidence of the facts stated therein, the burden is upon the caveator to show by clear and convincing proof that the facts thus stated are not true." More recent language by the Court of Errors and Appeals is of similar import. See e.g. In Re Lazzati, 131 N.J. Eq. 54,56, (E. A. 1942) where Mr. Justice Porter stated that, "where there is a perfect attestation clause a will should not be denied probate without the strongest evidence to rebut the presumption of validity of which the attestation clause is a most important element of proof." See also In Re Wherry,131 N.J. Eq. 505, 507 (E. A. 1942).
We are satisfied from our examination of all of the testimony that the evidence relied upon in support of the attack on the execution of the will falls far short of the proof which the authorities require to establish that the testator's will, bearing a complete attestation clause in proper form, was not signed by him and the attesting witnesses in lawful order. Accordingly, the judgment of the Orphans' Court is reversed with direction that the will be admitted to probate. *Page 208