12 N.J. Super. 132 (1951)
79 A.2d 76
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FELIX FOX, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1951.
Decided March 5, 1951.
*134 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Maurice J. McKeown argued the cause for the respondent (Mr. Richard J. Congleton, Essex County Prosecutor; Mr. C. William Caruso, Legal Assistant Prosecutor).
Mr. Gerald T. Foley argued the cause for the appellant.
The opinion of the court was delivered by BIGELOW, J.A.D.
The appellant was convicted by a jury of receiving paint brushes that had been stolen from the M.B. Paint Specialties Company, contrary to the provisions of R.S. 2:164-1.
One of the reasons urged for reversal is the denial of appellant's motion for acquittal at the conclusion of the State's *135 case. Such a motion now takes the place of a motion to direct a verdict for the defendant. Rule 2:7-7. Before the reorganization of our courts two years ago, a motion to direct a verdict was addressed to the discretion of the trial court. But if, at the conclusion of the State's case, the evidence was insufficient to make a case for the jury, the denial of a motion for a direction made at that time was considered to work manifest wrong or injury to the accused and to be ground for reversal. This was so, even though later in the case evidence was received sufficient to establish the appellant's guilt. Herein the rule was contrary to that followed in civil cases. State v. Pruser, 127 N.J.L. 97 (Sup. Ct. 1941). It was thought that if the civil rule were applied in criminal prosecutions, it would come perilously near compelling the accused to convict himself, since he must either forego making a defense on the merits or else risk having isolated bits of his testimony used against him to cure the deficiencies in the State's case. State v. Bacheller, 89 N.J.L. 433 (Sup. Ct. 1916). The substitution of a motion for judgment of acquittal in the place of a motion for a directed verdict, pursuant to Rule 2:7-7, seems to be a change of name rather than of substance. The denial of the motion still raises a question on appeal that must be decided without regard to the evidence presented later in the trial. We turn to a consideration of the evidence.
The State proved that the M.B. Paint Specialties Company was engaged in the manufacture of paint brushes, called Ace brushes from an identification mark stamped on them. On February 12, 1949, or early the next morning, someone broke into their factory and stole 34 1/2 dozen brushes of sundry sizes.
Fox, the appellant, was in the business of selling paint and paint brushes. One day around the middle of February, a painter named Rausch told him, "A man approached me last night. He said he had some brushes for sale." The man was another painter, La Rosa. Forthwith by telephone an appointment was made and Rausch and Fox drove to La Rosa's place of residence in East Orange. There La Rosa got into the car and directed them to an address on Norwood Street, Newark, where there was a garage which La Rosa *136 rented. He went to the garage and in a few minutes returned, carrying a box containing 40 or 50 Ace paint brushes. La Rosa offered them for sale at $7 or $8 apiece for one size, and $6 or $7 for a smaller brush. After bargaining and figuring for five or ten minutes, a deal was made. Fox paid around $300 or $350 in cash for the brushes and La Rosa departed. But first Fox gave Rausch $5 and La Rosa gave him two brushes. La Rosa testified that he had bought the brushes not very long before he sold to Fox. But evidently he did not buy from the M.B. Paint Specialties Company, for he said, "I didn't know where they came from," and that he was told "they were surplus brushes."
In March, La Rosa sold appellant more Ace brushes  about the same number or a few less than he had sold him in February. This time, appellant paid him for the brushes $381 by check. "By that time," La Rosa testified, "I knew that there was something phoney about the brushes and I didn't want any checks." But he added, "I couldn't tell him that because then I guessed the sale would be lost."
Such, in substance, was the evidence presented by the State. The recognized test employed upon a motion to direct an acquittal is whether or not there is any legal evidence before the jury from which an inference of guilt can be legitimately drawn. State v. Bricker, 99 N.J.L. 521 (E. & A. 1924); State v. Cammarata, 12 N.J. Misc. 115 (Sup. Ct. 1934); affirmed, 114 N.J.L. 274 (E. & A. 1935). The statute, R.S. 2:164-1, shifts the burden of going forward if a defendant is shown to possess stolen goods within one year after the theft. But there was no direct proof that the brushes purchased by Fox were some of the brushes stolen on February 12, or at any other certain time. Indeed, there was no direct proof that the brushes which Fox bought had been stolen at all, or, assuming that they had been stolen, that he was aware of the fact. So we come to the question, Were the circumstances which the State proved, such that a jury could properly infer that the brushes had been stolen?
In order to justify a conviction, the circumstances on which the State relies must be consistent with the defendant's *137 guilt and also, and more important for present purposes, they must be inconsistent with any rational theory of innocence. State v. Donohue, 2 N.J. 381, 390 (1949). The cited case dealt with the question whether the verdict was against the weight of the evidence, and not with the precise problem now before us, namely, whether the trial court should have directed a verdict. But when that is the problem and when the State relies upon circumstantial evidence, the inquiry is still whether the evidence excludes every reasonable hypothesis except that of guilt. State v. Boyd, 137 N.J.L. 23 (Sup. Ct. 1948); affirmed, Ibid. 615 (E. & A. 1948). If the circumstances are fairly consistent with innocence, the inference of guilt cannot legitimately be drawn and judgment of acquittal should be granted.
It is obvious that the proofs in the case before us fit the hypothesis that the brushes were stolen, in which event the defendant would be guilty of the crime charged. But it seems to us also clear that the circumstances which were proved are consistent with another hypothesis, namely,  that Ace brushes were sold to the Government during the war, and upon demobilization were declared surplus; that some of them eventually came into the possession of La Rosa and are the brushes sold to Fox. If such an hypothesis is reasonably and fairly tenable  and we find that it is  the motion for acquittal should have been granted.
We have omitted any mention of one item of evidence because we are satisfied it is without probative value against Fox. La Rosa was asked by the prosecutor: "You have entered a non vult plea, have you not, to the indictment here charging the receiving by yourself of brushes from the M.B. Specialties Company?" He answered, "That's right." The "indictment here" does not mean the indictment on which Fox was being tried, for La Rosa is not mentioned in that indictment. Perhaps the word "here" in the question means that the plea was entered in the same court in which the trial was proceeding, or that the prosecutor held the indictment in his hand while he asked the question.
*138 The State argues that the testimony just quoted proves that the brushes sold by La Rosa to Fox had been stolen from the Specialties Company and so excludes the hypothesis of appellant's innocence. This argument cannot be upheld merely by reference to general principles. If La Rosa's plea of non vult be considered as an admission of the facts stated in the indictment, it is not an admission by Fox and therefore not evidential against Fox unless it falls within some recognized exception to the general rule. Wigmore, Evidence, § 1069. The exception that first comes to mind is that under which a statement of one conspirator or co-actor, made in furtherance of the conspiracy or common enterprise, is evidence against another conspirator or co-actor. State v. Seidman, 107 N.J.L. 204 (Sup. Ct. 1930); affirmed, State v. Fischman, 108 N.J.L. 550 (E. & A. 1931); State v. Guida, 118 N.J.L. 289 (Sup. Ct. 1937); affirmed, 119 N.J.L. 464 (E. & A. 1938). But La Rosa's plea was not made in furtherance of any common plan to which he and Fox were parties, and so could not be evidence against Fox under that exception. State v. Herbert, 92 N.J.L. 341, 359 (Sup. Ct. 1918). Or it may be said that the confession of a principal is admissible on the trial of the accessory. Wigmore, Evidence, § 1079. State v. Fiore, 85 N.J.L. 311 (E. & A. 1913). But under our law, a receiver of stolen goods is guilty of a distinct, substantive offense, not an accessory to the theft; certainly not to a prior receiving or possessing of the same goods. State v. Calvin, 22 N.J.L. 207 (Sup. Ct. 1849); State v. Krupin, 100 N.J.L. 7 (Sup. Ct. 1924); affirmed, 101 N.J.L. 228 (E. & A. 1924). The thief and the receiver are not accomplices. State v. Rachman, 68 N.J.L. 120 (Sup. Ct. 1902).
But in State v. Rom, 77 N.J.L. 248 (Sup. Ct. 1909), on the trial of the receiver, the thief was permitted to testify that he had pleaded guilty. Objection was made "on the ground that the fact that the goods were stolen could not be proved in that way." On the appeal, the objection was not urged, but Chief Justice Gummere remarked that the ground of objection was clearly untenable. He cited no authorities and gave no reasons in support of his dictum. Similarly, 53 *139 C.J. 530 states it is generally held that the admissions of the thief are admissible to prove the theft, but the cases cited are not persuasive. On the other hand, Rex v. Turner, 1 Moody 347; 168 Eng. Rep. 1298 (Crown cases reserved 1832), holds that the confession of the thief is not admissible against the receiver. In State v. Gargano, 121 A. 657 (Conn. 1923), which contains a careful study of the problem, after pointing out that a plea of guilty is, in effect, merely a confession or statement by the pleader that he committed the crime charged, the court holds that it does not tend to establish the fact as against even a fellow conspirator. See also Kirby v. U.S., 174 U.S. 47, 19 S.Ct. 574 (1899); Peo. v. Kief, 27 N.E. 556 (N.Y. 1891); Wharton's Criminal Evidence, ch. 10, and especially §§ 722 and 724. Thus far, we have been considering the question as if a plea of non vult were the same as a plea of guilty. After sentence has been pronounced upon the plea of non vult, the defendant stands convicted of the crime just as much as if he had pleaded guilty or a jury had returned a verdict of guilty. Kravis v. Hoch, 136 N.J.L. 161 (E. & A. 1947). But in a civil suit for the same wrong, the plea does not bind the defendant, and it is not evidential against him. State v. Henson, 66 N.J.L. 601, 608 (E. & A. 1901). The case before us is, of course, a criminal prosecution, not against La Rosa, but against Fox. We are constrained to hold that his admission that he had pleaded non vult was not evidence as against Fox that the brushes had been stolen.
It was not incumbent upon Fox to object to the question about La Rosa's plea, for the evidence was admissible for an entirely different purpose than that which we have been considering. The State  like any other party  by presenting a witness impliedly represents to the court that he is worthy of some credit. Carluccio v. Winter, 108 N.J. Eq. 174 (E. & A. 1931). It is therefore proper, when the State must rely on the evidence of a criminal, for the prosecutor, at the beginning of the examination, to bring out the fact that the witness has been convicted of crime, since the fact may aid the jury in weighing his testimony.
*140 The motion for an acquittal should have been allowed.
There is a further reason why the judgment must be reversed. The State argued that the circumstances of the transaction with La Rosa were so peculiar that Fox should have known "that there was something wrong about those brushes." Among the circumstances stressed was that La Rosa "is a painter. He is not in the business of buying and selling brushes." And so Fox should have been put on his guard by the very considerable number of brushes that La Rosa offered to sell him. To meet this line of argument, Fox, when he took the stand, was asked by his counsel, "Would you say it is unusual for another painter to have in his possession 40, 50 or 60 brushes?" The prosecutor objected, but before the court could rule, Fox answered, "No, I have sold one contractor as much as $1,250 worth in one order." The court thereupon struck the answer. In our opinion, the answer was competent and material on the issue of appellant's knowledge that the brushes had been stolen  if that were the fact.
Judgment reversed.